# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br>  vs.<br><br>1.57 ACRES OF LAND, MORE OR LESS, SITUATED IN SAN DIEGO COUNTY, STATE OF CALIFORNIA, AND D&D LANDHOLDINGS, A LIMITED PARTNERSHIP, ET AL.,<br><br>                           Defendants. | CASE NO. 12cv3055-LAB (MDD)<br><br>**ORDER GRANTING MOTION TO EXCLUDE EVIDENCE OF NON-ECONOMIC VALUE AND SUBSTITUTE FACILITY COSTS** |
|---|---|

The United States filed this action to condemn roughly 1.57 acres of land for the purpose of securing the United States/Mexico border. There's no challenge to the condemnation; the dispute is over how much the United States must compensate the County of San Diego for the taking. The United States moves to exclude evidence of the property's "non-economic" value and the cost of a substitute facility. (Docket no. 33.)

**I.      Background**

      **A.      The County's Conservation Easement**

The condemned property is located within a roughly 90 acre conservation easement owned by the County. (*Id.* at 6.) The County acquired the conservation easement from the property's fee holders in return for allowing the fee holders to develop a salvage yard on

another site. (*Id.*; Docket no. 33-2 at 1.) The conservation easement requires the property "be retained forever in its natural condition" and prevents any use "that will impair or interfere with the [property's] conservation," including agricultural activity, construction, and commercial or industrial use. (Docket no. 33-2 at 1–3.) The relevant deed explains that the conservation easement "possesses wildlife and habitat values . . . of great importance to [the County] . . . ." (*Id.* at 1.)

### B. Multiple Species Conservation Program

The County is a party to a "Multiple Species Conservation Program" agreement ("MSCP") between it, the United States Fish and Wildlife Service, and the California Department of Fish and Game. (Docket no. 33-4.) The County contends the MSPC requires it to own and maintain a specified quantity of habitat acreage, such as the conservation easement. (Docket no. 35 at 2; Docket no. 33-3 at 2.) The MSPC includes a force majeure clause stating, in pertinent part:

> In the event that the County is wholly or partially prevented from performing obligations under this Agreement because of unforeseeable causes beyond the reasonable control of and without the fault or negligence of the County . . . including but not limited to . . . actions of federal or state agencies or other local jurisdictions, the County shall be excused from whatever performance is affected by such unforeseeable cause to the extent so affected, and such failure to perform shall not be considered a material violation or breach, provided that . . . [t]he suspension of performance is of no greater scope and no longer duration than is required by the force majeure; [and] [t]he County uses its best efforts to remedy its inability to perform . . . .

(Docket no. 33-4, at 24.)

### C. The Impact of the Taking on the Conservation Easement

The United States used about 0.43 acres of the condemned property to build a vehicle turnaround. (*Id.* at 5.) The County contends that the vehicle turnaround renders that portion of the property unsuitable for habitat conservation purposes and destroys burrowing owl habitat. (Docket no. 35 at 3.) Thus, the County argues, the vehicle turnaround deprives it of its interest in the property and affects it's compliance with the MSPC. The parties disagree on the measure of just compensation for this roughly 0.43 acre area.

///

## II. Discussion

The United States argues: (1) just compensation is determined by private market value, so the Court should preclude evidence relating to the value of habitat conservation, public interest, or other non-economic considerations; and (2) the County isn't obligated to replace the condemned property, so the Court should preclude evidence relating to replacement cost of a substitute facility. (Docket no. 33 at 9, 13.)

### A. Legal Standard

Federal Rule of Civil Procedure 71.1(h) requires the judge in a condemnation case to decide all issues presented except the amount of just compensation. *See United States v. Reynolds*, 397 U.S. 14, 19 (1970) (interpreting Rule 71.1 to require that "except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented"). "Consequently, the trial court is responsible for making preliminary determinations that affect the valuation of condemned property." *United States v. 32.42 Acres of Land*, 2009 WL 2424303, at *2 (S.D. Cal. Aug. 6, 2009).

"[J]ust compensation is the value of the interest taken." *United States v. Petty Motor Co.*, 327 U.S. 372, 377 (1946). It's normally measured by the market value of the property at the time of the taking. *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984). Under this measure, "[c]onsiderations that may not reasonably be held to affect market value are excluded." *Id.* (internal quotation marks omitted).

Courts deviate from the market value measure of just compensation "when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public." *Id.* (internal quotation marks omitted). "Such cases, for the most part, involve properties that are seldom, if ever, sold in the open market." *Id.* at 30. "In recognition of this unique problem, courts have developed the 'substitute facilities' doctrine as an alternative valuation method in public condemnation proceedings." *Prince William Cnty. Serv. Auth. v. United States*, 25 Cl. Ct. 678, 680 (1992) (collecting cases). "Under the substitute facilities doctrine, courts have recognized that the cost of providing necessary substitute facilities is a proper measure of just compensation if the condemnee has a duty

to replace the condemned facility or if substitute facilities are reasonably necessary in the circumstances." *Id.*

## B. Consideration of "Non-Economic" Evidence

The United States asks the Court to exclude "evidence of non-economic considerations," but doesn't identify the specific evidence it seeks to exclude. (Docket no. 33 at 11–12 (internal quotation marks omitted).) It apparently suspects that the County will rely on the subjective value it puts on its conservation easement, as opposed to the conservation easement's market value. (*Id.* at 10.) The County doesn't contest that market value is generally the relevant measure for just compensation. Instead, it contends that its conservation easement *does* have a private market value. (Docket no. 35 at 4.) It explains:

> [C]onservation easement property interests, which protect certain wildlife, habitats, and biological species, are freely traded in private, as well as public markets. These easements are valued based on their demand by willing buyers . . . . So while habitat properties do have a government demand that results in a public value, they also have a private demand that results in an economic value . . . . It is the County's position that the highest and best use of the property being condemned is its use as a conservation easement and that value is based on the habitat contained on it. This particular property contains burrowing owl habitat, a rare commodity, and serves the last viable population of burrowing owls in San Diego County.

(*Id.*) In response, the United States argues: (1) its biological survey didn't find any signs of burrowing owls and, in fact, revealed that the vehicle turnaround property had already been disturbed by non-native plant species; and (2) the fee owner already extracted the economic value of the conservation easement by trading it for the right to develop a salvage yard on another site. (Docket no. 38 at 5–8.)

At this stage of the case, without the benefit of discovery, it's unclear whether conservation easements on burrowing owl habitat have significant private market value and, if so, whether the condition of the vehicle turnaround property negated its value. The fee owner's actions have little relevance to these open questions. If anything, the fact that the fee owner was able to obtain economically valuable development rights in exchange for the conservation easement suggests that the conservation easement may have nontrivial economic value. Thus, the Court is unable to declare that the vehicle turnaround property

has no, or merely nominal, value.  But, to the extent the United States seeks to limit the County's evidence to that relating to market value, the motion is **GRANTED**.

### C. Cost of a Substitute Facility

The United States also seeks to exclude evidence regarding the replacement cost of a substitute facility.  It argues that the substitute facility doctrine doesn't apply because, pursuant to the MSPC's force majeure clause, the County "has no obligation to replace the 0.43-acre property taken." (Docket no. 33 at 13.) The Court agrees.  That the relief provided by the force majeure clause is of "no greater scope and no longer duration than is required" doesn't change this conclusion.  Nor does the requirement that the County "use[] its best efforts to remedy its inability to perform."  The United States' condemnation isn't temporary. Its construction of the vehicle turnaround renders the property incompatible with use for habitat conservation.  Try as it might, the County can't remedy its inability to maintain the vehicle turnaround property as preserved habitat acreage.  Since the force majeure clause relieves the County of its duty with respect to the roughly 0.43 acres taken, the substitute facility doctrine doesn't apply.[1]  *See Prince William Cnty. Serv. Auth.*, 25 Cl. Ct. at 680. Unless the cost of a substitute facility is relevant to the market value of the County's interest in the vehicle turnaround property, it's irrelevant and inadmissible and the Court **GRANTS** the United States' motion to exclude it.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] The substitute facilities doctrine is also unsuitable because it's inconsistent with the County's theory that conservation easement property interests are "freely traded in private . . . markets" and that there's "private demand" for conservation easements that "results in an economic value."  *See 50 Acres of Land*, 469 U.S. at 29.

### III. Conclusion

As set forth above, the Court **GRANTS** the United States' motion to exclude. (Docket no. 33.) The parties are **ORDERED** to contact Magistrate Judge Dembin within three days of this order to schedule a case management conference.

**IT IS SO ORDERED**.

DATED: September 8, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge